

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF OREGON**

TRISH M. BROWN
CHIEF JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1592

STEPHEN A. RAHER
LAW CLERK

SUZANNE M. MARX
JUDICIAL ASSISTANT

November 29, 2017

Julia I. Manela
Watkinson Laird Rubenstein PC
101 E. Broadway, Suite 200
Eugene, OR 97440

Keith D. Karnes
1860 Hawthorne Ave., Suite 10
Salem, OR 97301

**VIA CM/ECF ONLY**

Re: *Miller v. Gomez*, Adv. Proc. No. 17-6048-tmb
 *In re Gomez*, Case No. 17-61024-tmb7
 Plaintiff's Motion for Summary Judgment

Dear Counsel:

This matter came before the court on a Motion for Summary Judgment (the "Motion," ECF No. 16) filed by plaintiff Jonathan Miller in the above-referenced adversary proceeding. Plaintiff filed the Motion on November 3, 2017. Debtor has not responded. I write today to announce the court's ruling.

Background
Debtor filed a voluntary chapter 7 petition on April 5, 2017, and received a discharge on July 19, 2017. Debtor's schedule E/F lists an unsecured debt owing to Mr. Miller in the amount of $74,362.01. Main Case ECF No. 1 (schedule E/F, line 4.3). On July 6, 2017, Mr. Miller filed an adversary complaint seeking a determination that his claim against Debtor is non-dischargeable under § 523(a)(8) of the Bankruptcy Code. Debtor filed an answer generally denying many of the material allegations contained in the complaint.

Facts
I find that Mr. Miller has proven the following facts by a preponderance of the evidence. In or about January 2008, Debtor borrowed approximately $41,000 from Sallie Mae Educational Trust ("Sallie Mae") for the purposes of paying educational expenses he incurred as a student enrolled at Pepperdine University. Concise Stmt. of Material Facts ("CSF," ECF No. 18) ¶¶ 1-6. At the request of Debtor's father, Mr. Miller agreed to act as a co-obligor of the Sallie Mae loan. Declaration of Jonathan E. Miller (ECF No. 17) ¶ 2. At some point, Debtor defaulted on his obligations under the Sallie Mae loan, and in December 2013, Mr. Miller paid Sallie Mae the

entire balance due of 71,639.62. CSF ¶¶ 8-12. At the time of this payoff, Debtor agreed that he would repay Mr. Miller directly for the amounts that Miller had disbursed to Sallie Mae. *Id.* ¶ 10. This agreement was eventually memorialized in a promissory note signed by Debtor, as maker, which document states that Debtor's obligation to Mr. Miller arises from the "refinancing [of] a qualified education loan as defined in 26 U.S.C. § 221(d)(1)." Miller Decl., Exh. JEM-9 at 1.

Legal Standards
A court should grant summary judgment on a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (applicable through Fed. R. Bankr. P. 7056). The movant has the burden of establishing that there is no disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1040 (9th Cir. 2003). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1986). A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a finder of fact might return a verdict in its favor. *Id.* at 257.

Section 523(a)(8) of the Bankruptcy Code specifies that educational loans are non-dischargeable, unless repayment would constitute an undue hardship. In student loan dischargeability disputes, "the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters[;] [t]he burden then shifts to the debtor, to prove [undue hardship]." *Roth v. Educ. Credit Mgt. Corp. (In re Roth)*, 490 B.R. 908, 916-917 (9th Cir. BAP 2013).

Analysis
Although Debtor has not responded to the Motion, the court has an independent duty to ensure that Plaintiff has properly put on a prima facie case. Nondischargeability is an exception to the Bankruptcy Code's policy of providing a fresh start, and it is therefore especially important in a § 523 action that the plaintiff provide evidence sufficient to support its claims.

There are three types of educational loans that fall within the scope of § 523(a)(8), and Plaintiff contends that his claim against Debtor falls within at least two of these categories. First, plaintiff argues that his claim is a "qualified educational loan" under 26 U.S.C. § 221(d)(1) (which statute is incorporated by reference into § 523(a)(8)(B) of the Bankruptcy Code). I agree.

Qualified educational loans under § 221(d)(1) of the Internal Revenue Code must be incurred "solely to pay higher education expenses . . . incurred on behalf of the taxpayer . . . within a

reasonable period of time before or after the indebtedness is incurred, and . . . which are attributable to education furnished during a period during which the recipient was an eligible student." 26 U.S.C. § 221(d)(1). The loan documents governing the original Sallie Mae loan state that the loan was a qualified educational loan under this statute, and it otherwise has all the indicia of satisfying the requirements of § 221(d)(1).

Importantly, § 221(d)(1) specifies that a qualified education loan "includes indebtedness used to refinance indebtedness which qualifies as a qualified education loan." When a statutory term is undefined, courts use the widely acknowledged meaning of the word. *Barstow v. U.S. Internal Revenue Serv. (In re Markair, Inc.)*, 308 F.3d 1038, 1041 (9th Cir. 2002). The verb "refinance" is generally accepted as referring to an "exchange of old debt for a new debt, as by negotiating a different interest rate or term or by repaying the existing loan with money acquired from a new loan." *Refinancing,* Black's Law Dict. (10th ed. 2014).

I find that Debtor's debt to Mr. Miller arose out of the refinancing of the original Sallie Mae loan. Mr. Miller has provided sufficient evidence, in the form of correspondence between Debtor and himself, showing that he paid off the Sallie Mae loan in anticipation of Debtor agreeing to sign a promissory note (which he eventually did, after much foot-dragging) memorializing his agreement to repay Mr. Miller. Thus, Mr. Miller's payment to Sallie Mae constituted the repayment of a qualified education loan with money acquired from a new loan, and therefore Debtor's debt to Mr. Miller constitutes a qualified education loan for purposes of § 221(d)(1) of the Internal Revenue Code and § 523(a)(8)(B) of the Bankruptcy Code. Because I find that the debt qualifies as an educational loan under § 523(a)(8)(B), I need not address Mr. Miller's alternate argument concerning § 523(a)(8)(A)(ii).

Because Mr. Miller has proven that his claim is an educational loan within the scope of § 523(a)(8), it is therefore presumptively nondischargeable unless Debtor proves that repayment would constitute undue hardship. Debtor has not responded to Plaintiff's Motion, and therefore he has not satisfied his burden of proving undue hardship. Accordingly, I conclude that Debtor's liability on the promissory note dated July 14, 2014, and payable to Jonathan Miller as payee, is nondischargeable under § 523(a)(8) of the Bankruptcy Code.

Counsel for Mr. Miller should upload an order granting the Motion within fourteen days of the date of this ruling.

Very truly yours,

Trish M. Brown